Good morning judges. I'm Matt Pappas, one of the appellants. Marla James, Wayne Washington, Charles DeYoung, and Jim Armantrout. Just at the beginning here, Jim Armantrout has died. I wanted to let the court know that he recently died in this. This was not part of the action I guess any further. This case of course involves the claim by the appellants that they should be eligible under the Americans with Disabilities Act, Title II of that act, in terms of asserting claims against the cities related to zoning ordinances and laws that affect their ability to access medical marijuana. And the issue that the district court decided on relates to the 12210D exceptions in the ADA in respect to its prohibition against the use of illegal drugs in terms of qualification. The appellant's position is that the ADA exception, the 12210D exception, is separate from different than a totally separate federal law, the Federal Controlled Substances Act. And that the 12210D exception provided in the ADA itself covers and does not prevent the qualification of these disabled individuals from coverage by the ADA. And the ADA is amended in 2008 because it contains separate exceptions that are distinct from the CSA. You know, one of the things that's, I mean, you did an extensive analysis of the grammar and all of that, but one thing that strikes me is just overwhelmingly odd that this high profile issue which has been around and the status of marijuana and its debatable pros and cons, that Congress would have, through the ADA, created a kind of open-ended structure that says, taking your reading, that the illegal use of drugs does not include the use of a drug taken under supervision by a licensed health care professional. And marijuana under the Controlled Substances Act is a Schedule I, which says it has no currently recognized medical usages. And who knows what else might therefore be focused on marijuana here. But basically, if we accept your reading, it says that regardless of the Controlled Substances Act, a licensed health care professional can prescribe any controlled substance prohibited Schedule I drug. And why would Congress do that without cross-referencing or doing that through the Controlled Substances Act? Excuse me, because the ADA was designed to allow employers to, and this deals with employer-employee relations and non-discrimination, and to say that through that mechanism they somehow carved out this big loophole for a drug that is much debated, and not to mention cocaine. Or other drugs that somebody might decide to prescribe. So that's why I'm sympathetic to the concept that you're trying to achieve, but I'm just puzzled by how we could get there. Well, if you go back to the Congressional record, when the ADA was being debated by Congress, the first 12210D proposed exception before the Senate version of the bill was sent to the House for review, the provision written by Senator Jesse Helms, was specific as to exclusions related to the CSA itself. Later, in the House of Representatives, during committee discussions, and in fact, the committee invited the administration to provide some information as to what it thought in terms of the 12210D exceptions. At that point, the language was changed. In fact, an assistant U.S. attorney general appeared and discussed issues. In fact, he touched on, in a letter to the committee, the issues of perhaps marijuana being used by patients, compassionately, and then Congress changed the language. Changed it from what to what? From the prescription language to the current language? They changed it from, that's correct, they changed it from saying that the illegal use of a drug would not include a drug that would be allowed under the Controlled Substances Act, essentially. It's also true, I take it, that if read your way, the exception would, well, first of all, it doesn't really read like an exception. It doesn't say except that. It says that this is going to, should be understood as meaning, essentially. Second sentence. But I don't know what significance that has. Do you think it has any significance that it's not written as an exception? I think it's written to say this is what an illegal drug is not. This is what the first text means, essentially. It's kind of negative. I think it's significant in that Congress could have simply referred to the CSA itself as the exception. But secondly, the, presumably Congress could have had things other than marijuana in mind, if read your way. I mean, there are other instances in which doctors may direct someone to take some medication, which in some way conflicts with the CSA, I suppose. And in fact, I think in the letter from that assistant attorney general, they discuss not only marijuana, but there were discussions, at least in the committee, about methadone and other types of things that might be used. But why is methadone, I saw that was also in the legislative history more directly, but why would methadone be a problem? Is the use of methadone not consistent with the CSA? It is consistent with the CSA. I think that there are stronger restrictions on methadone. I didn't look deep into it. Now, what does the CSA say about, I mean, your brief's a little unclear about this. You keep saying there's nothing directly to the CSA about authorized use being under the supervision of a doctor. But what is there in general, what does the CSA say about whether if a doctor directs something, it's legal to use it? The CSA makes it, it imposes basically criminal liability in its penalty provisions for use, distribution, transportation, storage of a Schedule I controlled substance. And it does state, as it's scheduling particular drugs, if you look at the Schedule I definition, that in fact a Schedule I drug would not have, has not in turn to be safe for use even under supervision by a doctor. But that language is different than what the ADA includes. And looking at the legislative history. What I'm trying to figure out is if read the defendant's way, how, i.e., that the use under the supervision of the doctor has to be consistent with the CSA. What would that mean, i.e., is there anything in, the CSA is directed at the drugs and at the doctor. Is it also directed at the individuals who take medication? Is there any kind of safe harbor for taking medication under the direction of the doctor if it turns out to be an illegal use or illegal drug? I don't believe there's an exception from the separate and distinct criminal liability provisions in the CSA, unless there is a federally authorized research study under the CSA itself. The question of... Let me just pose it. Would you extend your argument to cocaine? In other words, you citing the compassionate use of marijuana in the legislative history. What about cocaine? Under your reading, it wouldn't limit it just to marijuana. I think cocaine is a Schedule II drug. I think it can be prescribed by a doctor. It can now, without any problem. I believe it's a Schedule II drug. Okay, but any Schedule I drug, marijuana, or any other Schedule I drug, heroin, I'm not sure what's on Schedule I. I think if there were a case made that an individual in a specific circumstance or circumstances would benefit from that particular substance... But that's not what you're saying. You're saying that as long as it's permitted by a licensed health care provider, then the ADA permits it. Well, the ADA is not permitting the use of the drug. It's simply saying, and I think this addresses your earlier question, it's simply determining qualification, eligibility for protection under the ADA. The CSA and the decision by the Department of Justice to bring charges for improper use of a Schedule I drug is separate and distinct from the... They're two separate federal laws brought up 20 years apart. Could you briefly... We haven't really talked about the statutory language itself, which is somewhat important. And you, in your brief, do a very complicated grammatical analysis, but in the end, I didn't understand why you weren't back in the same place, which was you still hadn't accounted for the use of the word other in the second sentence. Well, the use of the word other, I believe, refers up to the first part of the statute. And I think I addressed that in either the report... I know you said it, but I just don't understand. The paraphrases don't seem to me to work, because when, or at least this is my question, because the term illegal use of drugs means the use of drugs of possession or distribution of which is unlawful under the controlled substance of that. And then you would say, and it also means other uses authorized by the controlled substance of that. But that's totally redundant, because the first sentence says the use of drugs. So all you're saying is that the illegal use of drugs means something that's unlawful under the Controlled Substance Abuse Act, and it means something that's not authorized by the Controlled Substance Abuse Act. Well, I'm saying that the word uses refers to the definition of the uses of drug as defined in the first part of the statute. Which is what's legal under the Controlled Substance Abuse Act. And then if you use other uses authorized by the Controlled Substance Abuse Act, you're just saying the same thing twice. Well, I think, in fact, it's saying that it can be used under supervision by a licensed health care provider. And then, or it can be used, the use of drugs. The other refers to, or other uses of drugs that's authorized by the Controlled Substance Abuse Act. In fact, making it separate. So that use under supervision by a licensed health care provider is separate from then what it's saying in the CSA's law. I understand you said that. But I want to know, and then you say other refers to the uses in the first sentence. But the uses in the first sentence aren't other. They're the same as what's referred to in the second clause of the second sentence. Or if not, why not? The first sentence is defining what use of a drug is. That's what my position is. It's defining what use of a drug is. And uses refers back to use of a drug as defined in the first part of the statute. The other part of this is the other federal law issue. And the fact that Washington, D.C. Okay. I do. Here's another argument. I absolutely don't understand. Let me tell you why and see if you can tell me why I'm wrong. The federal law that you're referring to, assuming everything you assume about it that exists and it applies in D.C. and all that, it's a law that says in D.C. you can do this.  So how is it relevant? It's that Congress gave back to the citizens of Washington, D.C., the right to legalize marijuana. Okay, fine. And in California, all that the California government can do is decriminalize state law penalties related to marijuana. Okay, fine. But how does that make the how is that relevant to how is that a provision of federal law that authorizes the use in California of medical marijuana? It's that in Washington, D.C., I believe if somebody who is handicapped goes and makes a claim under the ADA, a zoning claim, Title II. All right, let's assume that's right. How does that help you in California? Well, if that person can bring that claim and they would be allowed to do so because Congress allowed that statute. It's not a state government. It's a federal sovereign that did it under its Article I. I understand all that. I'm not quarreling with any of that. I'm just saying that's Washington. We're in California. Citizens in California should have the same ability. But they don't under the statute. It's not a provision of federal law. You're just trying to say there's another federal law in D.C., but it's limited by its terms. No, I'm trying to say that the first action by Congress when it took away the Article I, Section 8, Clause 17 power ban on implementation of the voter-passed initiative that legalized medical marijuana, when it took that away and gave it to the citizens of Washington, D.C., that the citizens of California should likewise... That's your equal protection claim, I guess, but it's not another provision of federal law. It doesn't authorize it. That federal law does not authorize the use in California. It authorizes whatever they can do in D.C. That's the federal law we have to deal with. And so if we take that a step further, if California had the power to authorize that use like Washington, D.C. does, it would have done that, and it hasn't had that power. Right. And the argument is that it does, and that, in fact, it is attempting to, for its citizens, make that available. So this is not a statutory argument. It's a constitutional argument? It's a constitutional argument. And it's a constitutional equal protection argument, or what? It is an equal protection argument. It's an argument related to fundamental voting rights, that the citizens of Washington, D.C., if they can vote to legalize, and, in fact, their law legalizes, it doesn't just decriminalize, like you have in California, that the voters of California should have that ability to do so. In 1996 — Wait a minute. Okay. You said it is not a statutory argument. Are you waiving that? Did you make that argument in your brief? Didn't you try and bring it under other provisions of federal law in the illegal use of drugs? The part that I'm talking about in terms of the public law of 111-117 is a constitutional argument. Okay. But that's not answering my question. Are you — you said we're not making this statutory argument. You were, and we were talking about other provisions of federal law. That's how you introduced your argument. So I just want to get clear, Counselor. There is a statutory argument. We won't get it clear if you don't let me finish. You started your argument saying, I also want to address the other federal law issue. Okay. One of the arguments in your brief is you're trying to bring it under other provisions of federal law, and you cite the D.C. statute. Now, are you or are you not arguing that that D.C. statute is another provision of federal law? Or are you now saying, no, all we're really arguing is equal protection? I'm arguing that public law 111-117 from 2009, the Omnibus Appropriations Act, is the other federal law, not the Washington, D.C., local legislation. It's not positive legislation in that right in 111-117, it says you have the right to use medical marijuana. They actually removed an Article I, Section 8, Clause 17 power-based restriction. And when they did that, they argued amongst themselves, at least in the House of Representatives, about the viability and the benefits of marijuana for Washington, D.C. In fact, the opposition — Well, this could be an argument with regard to the CSA about why Schedule I should be changed, or maybe it was changed by whatever Congress did, but I don't see how it has anything to do with us in California with regard to this particular statute. It's that Congress acted to — Congress acted to say that in Washington, D.C., it's okay to do this. That's what they acted to do. And so it is an other federal law where Congress is allowing the use of medical marijuana. In Washington, D.C.  Okay, but not in California. So should all of the disabled people have to go to Washington, D.C. to use medical marijuana? All right, this is not getting anywhere. I mean, unless you're running it through the Constitution, which it's really unclear whether you are, because sometimes you say yes and sometimes you say no. I am running it through the Constitution in terms of the fact that voters in California would have done more than simply decriminalize in 1996 had they — had it been available to them. And now that Congress has done that for Washington, D.C., the voters here should be able to do that. It's at least an act far advanced from the CSA's passage in 1971 or 1972 that Congress is making an analysis about the benefits of medical marijuana. And then if you separate the 12.210 qualification provisions from the CSA — When you tie the CSA — I was here way over time, so maybe we ought to hear from the other side. Good morning, I'm Jeffrey Dunn. I represent the city of Lake Forest. To my far right is Mr. James Touchstone. He represents the city of Costa Mesa. We've divided our allocated time equally. Mr. Touchstone in particular will discuss the language in section 12.210. I'll be focusing on the Controlled Substances Act, and particularly its relationship with the federal ADA. I should start off by responding to counsel's comment that the ADA is separate and apart from the Controlled Substances Act. The problem with that argument is that when you look at that section in the ADA, that section 12.210, right there in subsection D, both in D.A. and D.B. — D.1, excuse me, and D.2 — there's reference to the Controlled Substances Act. And it's already been noted in argument that the definition, the illegal use of drugs is defined by what is unlawful under the Controlled Substances Act. But then when you jump down to D.2, it says the term drug also means a controlled substance as defined in Schedules I through V of Section 202 of the Controlled Substances Act. But I guess the question is, are your reading and leaving aside the other provisions of federal law, what's the point of the second sentence? As I understand that entire D.1, it works as follows. You have Schedules I through V in that subsection D. It is under Schedules II through V, those substances that are listed there, under some circumstances may be prescribed by a doctor. Okay. So that's under the Controlled Substances Act. So you don't need to say it again. If you read the first sentence, the second sentence, as continuing to carry forward the Controlled Substances Act limitation entirely, then you don't need the second sentence. Well, I think that language is helpful because there are drugs which their use is illegal unless they're specifically allowed under a doctor's care and prescribed appropriately. Okay. Under the CSA. Yes. Therefore, it's not a drug to possession or distribution of which is unlawful under the Controlled Substances Act if you're using it legally. Yes. Under the Controlled Substances Act. So you don't need the second sentence. Yes. I agree with that. But I think the point I would like to make is you don't get to the use of a drug taken under supervision by a licensed health care professional in this D1 because the Schedule I drugs, those Schedule I narcotics are never allowed to be prescribed by doctors. So? And so there's no provision under which the ADA would apply here. Well, if you assume that this is. . . Well, that's not pursuant to the terms of the ADA. That's pursuant to the Controlled Substances Act. Correct. Okay. So again, you just write back to where you started with Judge Berzon. I mean, I think Judge Guilford wrote a careful opinion, but I was not persuaded that you can't construe the sentence, the sentence structure, so that other doesn't have any explanation. It clearly does. You can clearly construct a logical reading which says that the illegal use of drugs means the use of drugs, period. Okay? That term, that term does not include, and I assume that term is use of drugs, does not include the use of drug taken under the supervision by a licensed health care professional. Stop. Nor does it include other uses authorized by the Controlled Substances Act. Your reading would say, well, no licensed health care professional can prescribe marijuana or any other Schedule I drug. So? Okay. And if the Controlled Substances Act provides all the conditions under which a licensed health care professional can prescribe any one of the Schedule I through V, then you don't need the first clause. Well, if you're telling me . . . So, you know, at least it's ambiguous. Well, it could have been written in a different way, perhaps. But this is the way that it's written, and the way that it is written does have the word other there. But other could simply mean . . . Logically explained. But I agree with you. Grammatically. Why doesn't other just mean, why doesn't the second sentence mean, such term does not include the use of a drug taken under supervision by a licensed health care professional, that is, without regard to the CSA, or other uses, that is, uses other than those under supervision by a licensed health care professional, if they're authorized by the Controlled Substances Act or other provisions of federal law. But the way that it is read here is other uses authorized by the Controlled Substances Act. Right. And that's just, I mean, it's English grammar that sometimes you leave out words that aren't necessary. And basically what you're saying is other uses if they're authorized by the Controlled . . . In other words, other than ones taken under supervision by a licensed health care professional are okay if they're authorized by the Controlled Substances Act. So everything . . . Yes. So it means everything that is under supervision of a licensed health care professional and other things if they're authorized by the Controlled Substances Act or other provisions of federal law, even if they're not under the supervision of a licensed health care professional. Yes. Why isn't that the most reasonable, sensible way to read that sentence? If I'm understanding Your Honor correctly, I believe that's how the lower . . . No, but you want to read into the first clause authorized by the Controlled Substances Act, despite the comma and despite the fact that you make a totally superfluous. No. What I'm saying is that there's no circumstance where a Schedule I narcotic can be lawfully distributed by prescription but to a licensed or by a licensed health care professional. But that's not helpful because the question is whether this clause is independent of the Controlled Substances Act for purposes of the ADA. That's the question. And I would agree that the way that it is written currently that the or other uses authorized by the Controlled Substances Act is consistent with the first clause. You're reading it as if the second clause, other uses, could be uses that are not prescribed not under the supervision of a licensed health care professional. Yes. But you're also reading the authorized by the Controlled Substances Act as modifying the first part of the clause, right? No. You're not using, you're not reading authorized by the Controlled Substances Act as modifying such term does not include drug taken under supervision by a licensed health care professional? Well, yes and no. There are three circumstances here. One is that it includes the use of a drug taken under supervision by a licensed health care professional. And then the comma or other uses authorized. So the way that it is read, and I believe correctly by the lower court, is you look at the first clause as include the use of a drug taken under supervision by a licensed health care professional, comma, or other uses authorized by the Controlled Substances Act. And it's the word other that modifies the first, both to be consistent, saying these are uses that have to be consistent with the Controlled Substances Act. And so there could be situations where, in addition to ---- You're reading, you're essentially reading it as saying drug taken under supervision by a health care professional or other uses. Authorized by the ---- Right. So you should really have the, but the comma is not there. It would have to be after uses, but in fact it's after professional. And you are reading authorized by the Controlled Substances Act, that phrase as modifying both of the previous ones. That's what you're saying. Yeah. I'm saying that it has to be consistently read under the Controlled Substances Act. So whether under the Controlled Substances Act it's allowed to be licensed, excuse me, prescribed by a licensed health care professional, or some other use that the Controlled Substances Act allows in addition to being prescribed by a licensed health care professional. All right. And does the Controlled Substances Act in fact tell you, say anything about under supervision by a licensed health care professional? There is some language in another portion of the Controlled Substances Act, I believe it might be section 829, in the penalty provision that talks about there is some language there about using narcotics or the drugs there, but that's the only other reference that I'm aware of. So if the Controlled Substances Act doesn't authorize the use of drugs under the Controlled Substances Act, then why would you have a modification like that? Well, if I'm, I want to respond to the question, and I hope I'm understanding correctly. There are some circumstances where the Controlled Substances Act bans the use of drugs or narcotics, depending upon where they fall on the schedule. I understand. The Schedule 1 in all circumstances are not allowed for medicinal use, period. The Schedules 2 through 5 may in various circumstances be allowed for certain types of medicinal use, including prescription by doctors. And so when you look at D1 here, Section 12210, the way that it is written is consistent with the application of the Controlled Substances Act. In other words, it does not abrogate it. It does not modify it. It simply goes to a doctor, and the doctor says, here, take this morphine, okay? And in fact, morphine is not allowed to be used for whatever he's prescribing it for. So it's an illegal use of morphine. That person is not a qualified person under the ADA? Well, the person may be qualified under the ADA because of the physical situation that the person finds himself in. But if the employer says, I don't want anybody taking morphine, and by working here, he would not be qualified. Depending upon where it falls on the schedule, yes, that's correct. If it's a Schedule 1 narcotic. Even though his doctor told him to take it. Yes. Under the ADA and the Controlled Substances Act, the answer would be yes. I mean, the claim that's before us in this case is a single claim under the ADA. And so in the framework that we're operating in, which is the Americans with No, that situation would not be allowed to occur. It would not state a claim under the ADA. The individual himself or herself may be suffering from a disability. But the reasonable accommodation is not to allow the use of drugs that are listed on Schedule 1. I bet if somebody takes a drug, there are some drugs that are approved in Europe but aren't approved here, for example. And his doctor says, you know, you really should take that drug. It's really the best thing for you. That happens sometimes. And I understand it's not approved here, but it's really what you want to be doing. So that person is not protected either. I don't know the answer to that question. It would fall within, arguably, within D1 here, to see whether it falls within the Controlled Substances Act. But if it falls within the Controlled Substances Act, even though his doctor told him it was the best thing for him and it's legal somewhere else, he can't do it. That's correct under the ADA and the Controlled Substances Act. Thank you. Thank you. I'll yield my time. Thank you. Good morning. James Touchstone on behalf of the city of Costa Mesa. I just wanted to address a couple of points briefly. I think most of everything that needs to be said has been said, so I won't belabor those points. I also wanted to go back to a comment made a little bit earlier in the argument, which is this, and I think this is an important issue to consider. We have here an argument by the appellants that there essentially has been a wholesale amendment of the Controlled Substances Act and the Americans with Disability Act, based upon the placement of a comma and the use of a blind sentence in those two very large statutory schemes. It is very clear under the CSA that marijuana is a Schedule I drug, just as is heroin, and it is also very clear that the current illegal use of drugs under the ADA disqualifies somebody for its protections. So I think if you look at those two statutory schemes in their entirety and you boil down the points that are made here. That's not informative because our question is, what is the illegal use of drugs for purposes of the ADA? I think the illegal use of drugs, Your Honors, anything is prohibited by the CSA, which was specifically incorporated. Well, that's what you're saying. I understand that's our question, not the answer. That's the question. It's not the answer. I mean, given the fact that there's a definition and we have to figure out what it means. I mean, fine, it's only two sentences, but it's the two sentences that matter. Well, certainly they matter, and I don't mean to belittle that, but nevertheless I think that as a rule of statutory construction, you have to read these two things holistically. And I think for the argument that appellants are trying to make is that that one sentence, while it may be important, essentially operates as a wholesale amendment of these two statutory schemes to permit all Schedule I drugs. It doesn't permit anything. All it does is define who's a qualified person for purposes of the ADA. It doesn't protect them from prosecution or anything else. Well, certainly it doesn't do that, but its concomitant effect would be to amend the CSA. Why not? Because the ADA incorporates those provisions of the CSA into its protections. It specifically calls for that. So if you are affecting one, then you're essentially carving out an exception to the other, the CSA. And this exception that they're trying to create here would be an exception for all Schedule I drugs, not just marijuana. I think there's a tendency to do it. As this language developed through the legislative history, it seemed this add-on about other uses authorized by the Controlled Substances Act was not in the original version that talked about prescriptions. There was no other. It was just if it was a valid prescription, it was okay. Right? Under that language, which I gather, which was Senator Helms' address version, then medical marijuana would have been all right. Well, I beg to differ with that interpretation. That was certainly what was proffered by the CSA. I know what was proffered. It's my interpretation. It's not his. I don't know what they're interpreting. Fair enough. Why not? I think that in my review of the legislative history of the Act, Senator Helms was concerned that the ADA would protect illegal drug users. I know what he was concerned about, but I'm talking about what he wrote. Well, what he wrote was an incorporation of the CSA into the ADA, saying if it is prohibited by the CSA, then it does not afford protection. But not if there's a valid prescription. I'm sorry? But not if there's a valid prescription. Well, there can't be a valid prescription. That kind of goes down to the bedrock argument here. It's a Schedule I drug. All right. Then it was amended to read this way, and then the first explanation that was written of it had broke the sentence up into two places and said it included the use of drugs under supervision by a licensed healthcare professional and also other uses authorized, which is the other way to read it. So there's certain – I mean, insofar as one looks, this is certainly not clear. And insofar as one looks at the legislative history, I don't think it's perfectly clear either, but it tends in the direction of the plaintiffs. I would agree with the Court that there is some ambiguity in this language. I don't think that anyone can dispute that. It could have been drafted better than it is. However, I think that you go to the basic statutory construction where you have to read these things holistically to be consistent with each other and also to promulgate the means that they were both designed to. All right. So what is your explanation of the sentence? I don't know what makes our job so hard when Congress writes these statutes. And sometimes my job as well, Your Honor. We've got a calendar of those. Yeah, but it keeps us all in business, doesn't it? Succinctly, what does the second sentence mean? What's it there for? Why do you need it? Why couldn't they just have thrown it out? I think that the one distinction that I can grab onto, and my best answer for this Court is this. There are instances where you can use drugs under the CSA, under the care of a health care professional which does not require a prescription, particularly if you have to speak to a lawyer. Okay, but that's because it's not legal under the CSA and you still don't need the sentence. The first sentence says that if you're using it, if it's unlawful under the CSA, you can't do it, right? That's correct. But the converse is if it's lawful under the CSA, you can do it. Why do you need the second sentence? Well, I think that the best answer I can give you is perhaps it might not ought to be there, number one. But number two, because it is there, I have to, we have to read it in harmony with the entire scheme. And the reason that you have to do that is modifying the legal use of drugs from that first sentence to essentially state that if it's permissible, permissible use by a health care professional, which would include the research studies that are agreed upon, and granted, Your Honor, I see your point. Certainly that would be incompassible in the first sentence. But nevertheless, it is there. And if it is there, it must be read in harmony with the whole scheme. But we have a basic rule of statutory construction that we don't have superfluous things. And you seem to have a totally superfluous sentence the way you're reading it. Well, Your Honor, I would also state that we have a basic rule of statutory construction that states that statutory schemes must be read in conjunction and harmonized by the court rather than carve out an exception based upon a very minor sentence in one of those two statutory schemes. And I think that if Congress intended that, it would have been explicit. Indeed, as the appellants admit in their brief on page 30, there is not even a definition of what a health care professional is in the ADA. So I think that if Congress wanted to draw such a broad gaping exception, which would, in fact, swallow the rule encompassed in both the ADA as well as the CSA, in my opinion, that it would have been very explicit in doing so. There would have been, indeed, an entire section of both acts that would have needed to be amended thoroughly in order to accommodate the use to which the appellants seek to put this case today. So just to be specific, although this case arises under a different title, the same limitation applies to the employment title, and it means that an employer could fire somebody for taking medical marijuana. Yes. Okay. Thank you. All right. Thank you. Let's see. I think your time's up, isn't it? Yeah. All right. We'll move on. Thank you, counsel. Thank you. We need all the help we can get on this statute. By the way, you are aware that we've asked the Justice Department to file breaks on that, and you will have the opportunity to comment on those. Thank you. All right. UMG Recordings v. Yeho Networks. Thank you. I'm going to let the court settle down a little bit. People are moving up towards better seats.
judges: Pregerson, Fisher, Berzon